**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**JAMON MONTANEZ,**

                                            **Petitioner,**

**v.**                                                               **9:10-CV-0947**
                                                                        **(GLS)**

**WILLIAM A. LEE,**

                                            **Respondent.**

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**APPEARANCES:**                              **OF COUNSEL:**

**FOR THE PETITIONER:**

**JAMON MONTANEZ**
Petitioner, pro se
05-B-3454
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

**FOR THE RESPONDENT:**

**HON. ERIC T. SCHNEIDERMAN**          **PAUL B. LYONS, ESQ**.
Office of the Attorney General         Assistant Attorney General
State of New York
120 Broadway
New York, NY 10271

**GARY L. SHARPE**
**United States District Judge**

**<u>MEMORANDUM-DECISION AND ORDER</u>**

**I.      BACKGROUND**

         **A.      <u>State Court Proceedings</u>**

         According to the state court records supplied to this Court, on April 21, 2005, an Oneida

County Grand Jury charged petitioner, *pro se*, Jamon Montanez, a/k/a "Nitti," together with Damien R. Keiser a/k/a "Hatchet" with the crimes of murder in the second degree, in violation of New York Penal Law ("Penal Law") § 125.25(3) and criminal possession of a weapon in the third degree, contrary to Penal Law § 265.03(3).  *See* Indictment Number 2005-145 (Dkt. No. 15-2) ("Indictment").  That accusatory instrument also charged Montanez with a separate count of murder in the second degree, in violation of Penal Law § 125.25(1).  *Id.*

The jury trial of Montanez on the above charges commenced on October 3, 2005 in Oneida County Court, with the Hon. Barry M. Donalty presiding.  *See* Transcript of Trial of Jamon Montanez (10/3/05) (Dkt. No. 15-10) ("Trial Tr.").  At that proceeding, the prosecution established that in March, 2005, Montanez asked Keenon Walker to participate in a "robbery set up" of a "Spanish dude."  *Id.* at pp. 486-88.  Walker, who had known Montanez for several years, declined to participate in the robbery because Montanez told Walker that Montanez wished to have Keiser accompany Montanez during the crime, and Walker had had a prior altercation with Keiser.  *Id.* at pp. 485-87.

On Wednesday, March 2, 2005, Keiser and Montanez informed Manuel Heredia a/k/a "Mo," *see id.* at p. 295, that they planned to rob someone Puerto Rican, and they asked Heredia if he would get the two men guns to assist them in their anticipated crime.  *Id.* at pp. 296-97, 299.  Heredia agreed, and he eventually obtained two loaded, sawed-off shotguns for them.  *Id.* at pp. 297-98.  At about 10:30 p.m. that same day, Keiser and Heredia left Keiser's home using a white car that belonged to Susan McConnell, Montanez's girlfriend.  *Id.* at p. 299.

The record further reflects that after completing her work shift at about 10:45 p.m. on March 2, 2005, Natasha Neal was arriving at her home on John Street in Utica, New York.  *Id.* at

2

pp. 246-48.  Around that time, Neal saw a person exit a white car and go to the apartment of her

neighbor, Eric Silvagnoli, who was Hispanic.  *Id.* at pp. 249, 251.  When Silvagnoli opened his

door, Neal saw the person who had exited the car fight with Silvagnoli.  *Id.* at p. 249.  At some

point during that altercation, she saw the individual who exited the automobile holding "a big

black thing," after which she saw a flash of light and heard the sound of a gunshot.  *Id.* at p. 250.

Silvagnoli began running from his apartment, but soon thereafter fell to the ground.  *Id.*

At the time of the shooting, Utica Police Officer Samuel M. Geddes was conducting

narcotics surveillance one block away from John Street when the officer heard a "loud bang."  *Id.*

at pp. 263-65.  During his investigation, he came upon a "large pool of blood" in the vicinity of the

700 block of John Street.  *Id.* at p. 266.  After other officers arrived, Officer Geddes began

"following the blood trail" and soon came upon a man, later identified as Silvagnoli, laying

against a home on Blandina Street.  *Id.* at pp. 266-67.  Silvagnoli had a large amount of blood on

his shirt; he was "very pale" and unresponsive.  *Id.* at p. 267.  Silvagnoli had no cardiac function

when he arrived at the hospital and was soon thereafter pronounced dead.  *Id.* at pp. 287-88.[1]

Shortly after 11:00 p.m., Montanez and Keiser returned to Keiser's home, where Heredia

was also present.  Trial Tr. at pp. 299-300.  Montanez informed Heredia that Montanez had "shot

the dude" in the stomach because the victim had tried to grab Keiser's gun.  *Id.* at p. 300.  After the

shooting, Montanez and Keiser asked Heredia to dispose of the guns that were used in the

homicide.  *Id.* at p. 301.  Heredia agreed, and he and Barbara Arroyo then drove to the Mohawk

---

[1]Dr. Michael Sikirica, the Rensselaer County Medical Examiner, performed Silvagnoli's
autopsy.  Trial Tr. at pp. 600, 604.  Within a reasonable degree of scientific certainty, Dr. Sikirica
determined that Silvagnoli bled to death as a consequence of a perforation of his right lung due to
a shotgun wound.  *Id.* at pp. 615-16.

River with the guns, after which Heredia threw them into that river. *Id.* at pp. 301-04.

Several days later, Montanez stayed in the apartment of a friend, Jasmine Vasquez. *Id.* at pp. 543-44. On the morning of March 7, 2005, while Vasquez was eating breakfast, Montanez told her that when he and Keiser had gone to an apartment to rob an individual, the intended victim placed Keiser in a headlock, and Montanez "had to blast" the victim to end his grip on Keiser. *Id.* at pp. 543-46.

Montanez was subsequently arrested and detained in the Oneida County Jail, where Tirus Freeman was being held on a parole violation. *Id.* at pp. 330-31. While in jail, Montanez spoke to Freeman about the charges pending against Montanez. *Id.* at p. 333. During that conversation, Montanez told Freeman that Keiser had committed a robbery that had gone badly and that Montanez shot the victim with a shotgun. *Id.* at pp. 333-34. Montanez also volunteered at that time that he had obtained the gun from an individual named Heredia, and that he and Arroyo had thrown the guns into a river after the homicide. *Id.* at p. 334. Montanez then indicated to Freeman that Montanez intended to "eliminate" Keiser, Arroyo and Heredia. Specifically, the record reflects that Montanez asked Freeman to kill Arroyo, *id.* at p. 337, and Montanez informed Freeman that Montanez intended to kill Keiser by providing him with a poison-laced marijuana joint. *Id.* at p. 336. Montanez also told Freeman that he intended to utilize someone from "down south" to kill Heredia. *Id.* at pp. 336-37. Freeman subsequently contacted Kurt Hameline, an Assistant District Attorney who had prosecuted Freeman twelve years earlier, and informed the assistant district attorney of Montanez's plan. *Id.* at pp. 337-38.

Montanez's case proceeded to trial before Judge Donalty and a jury in Oneida County Court on October 3, 2005. Just prior to jury selection, the prosecutor filed a motion *in limine* to

4

admit evidence of uncharged crimes and/or prior bad acts involving Montanez, including evidence of, *inter alia*, Montanez's plan to have witnesses killed to prevent them from being able to testify against Montanez, as well as the evidence that Montanez went to the scene of the homicide the day after the crime with the plan to kill one of the eyewitnesses if she identified Montanez.  Trial Tr. at p. 16.  At the *Ventimiglia* hearing[2] conducted by the County Court prior to Montanez's trial regarding the evidentiary request made by the Oneida County District Attorney ("District Attorney"), defense counsel opposed the introduction of evidence of uncharged crimes, including Montanez's plan to kill witnesses and his alleged solicitation of Freeman to kill Arroyo.  *Id.* at pp. 17-19.  At the conclusion of that hearing, the Trial Court found the District Attorney's proffer to be evidence of Montanez's consciousness of guilt that was "clearly probative" of the charges against him.  *Id.* at pp. 19-20.  That court therefore ruled that the prosecutor could introduce such evidence at trial but noted that the jury would be given an appropriate charge regarding the value such evidence.  *Id.* at p. 20.

At the conclusion of his trial, Montanez was found guilty of:  i) second degree felony-murder as to Silvagnoli; ii) second degree manslaughter with respect to Silvagnoli; and iii) second degree criminal possession of a weapon.  *See id.* at p. 733.  The jury acquitted Montanez of the intentional murder of Silvagnoli.  *Id.*

On November 28, 2005, Montanez appeared before Judge Donalty for sentencing on the above convictions.  At that proceeding, the County Court sentenced Montanez as a second

---

[2] *People v. Ventimiglia*, 52 N.Y.2d 350 (1981).  A *Ventimiglia* hearing is the current procedure utilized by New York courts to determine whether the probative value of prior bad act evidence outweighs its prejudicial impact.  *See Sutton v. Herbert*, 39 F.Supp.2d 335, 339 n.3 (S.D.N.Y. 1999).

violent felony offender to concurrent, indeterminate prison terms of twenty-five years to life on the second degree murder conviction and seven and one-half to fifteen years imprisonment on the second degree manslaughter conviction.  *See* Transcript of Sentencing of Jamon Montanez (11/28/05) (Dkt. No. 15-12) ("Sentencing Tr.") at pp. 15-16.  That court also sentenced Montanez to a consecutive, determinate prison term of fifteen years on the second degree criminal possession of a weapon conviction.  *Id.* at p. 16.

Montanez appealed the foregoing convictions and sentences to the New York State, Supreme Court, Appellate Division, Fourth Department.  *See* Appellate Brief on Appeal (Dkt. No. 15-1).  Montanez filed a *pro se* supplemental brief in further support of his appeal, *see* Dkt. No. 15-3 ("*Pro Se* Appellate Brief"), and the District Attorney filed papers in opposition to that appeal. *See* Dkt. No. 15-4.  In a Decision and Order dated December 31, 2008, the Fourth Department affirmed Montanez's convictions but modified his sentences so that the sentence imposed on him for the weapons possession conviction would run concurrent with, rather than consecutive to, the other sentences imposed on him by Judge Donalty.  *People v. Montanez*, 57 A.D.3d 1366 (4th Dept. 2008), *leave denied*, *People v. Montanez*, 12 N.Y.3d 857 (2009).

### B.    This Action

Montanez commenced the present action by filing a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 with this Court on July 27, 2010.  *See* Petition (Dkt. No. 1) ("Petition").  In his petition, Montanez argues seven distinct grounds in support of his request for federal habeas intervention.  Specifically, he claims that:  i) the cumulative effect of errors committed by the County Court deprived petitioner of his right to a fair trial; ii) Montanez received the ineffective assistance of counsel due to the manner in which such counsel cross-

examined certain prosecution witnesses; iii) the County Court wrongfully failed to administer the oath of truthfulness to prospective jurors; iv) the evidence adduced at trial concerning the felony-murder charge was insufficient to sustain the jury's verdict, which verdict was also against the weight of the evidence; v) the County Court wrongfully directed that the sentence imposed on Montanez for the weapons possession conviction was to run consecutive to, rather than concurrent with, the other sentences imposed on Montanez; vi) the Trial Court's *Ventimiglia* ruling constituted an abuse of the County Court's discretion and violated Montanez's right to a fair trial; and vii) the County Court committed error when it failed to instruct the jury that certain prosecution witnesses were accomplices as a matter of law.[3]  *See* Petition at pp. 15-16.

On March 25, 2011, the Office of the Attorney General of the State of New York, acting on respondent's behalf, filed a response in opposition to Montanez's petition.  *See* Dkt. No. 13. Along with that response, respondent's counsel filed a memorandum of law in opposition to Montanez's petition, Dkt. No. 14 ("Resp. Mem."), together with various state court records relating to the conviction challenged herein.  *See* Dkt. No. 15.

This matter is now ready for disposition.

## II.    DISCUSSION

### A.    <u>Procedurally Barred Claims</u>

In opposing Montanez's petition, respondent initially argues that petitioner is procedurally barred from obtaining relief as to certain of his claims.  Specifically, he argues that petitioner has

---

[3] Although Montanez's pleading contains eight grounds for relief, the fourth and fifth claims in that pleading both contend that the evidence adduced at trial was legally insufficient to sustain the felony-murder conviction, and also that the jury's guilty verdict as to such charge was against the weight of the evidence.  *See* Petition, Grounds Four, Five.

failed to fully exhaust, *inter alia*, his initial ground for relief, *i.e.*, that the cumulative effect of the County Court's erroneous evidentiary rulings deprived Montanez of his right to a fair trial. *See* Resp. Mem. at pp. 18-21. Respondent further argues that petitioner is procedurally barred from obtaining federal habeas relief as to the claims asserted by him in his fourth and fifth grounds for relief, in which he challenges the sufficiency and the weight of the evidence adduced at trial regarding Montanez's guilt of the felony-murder charge.

### 1.    Unexhausted Claim

It is well-settled that a federal district court " 'may not grant the habeas petition of a state prisoner unless it appears that the applicant has exhausted the remedies available in the courts of the State . . . .' " *Shabazz v. Artuz*, 336 F.3d 154, 160 (2d Cir. 2003) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001)); *see also Hill v. Mance*, 598 F.Supp.2d 371, 375 (W.D.N.Y. 2009). This is because "[s]tate courts, like federal courts, are obliged to enforce federal law." *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)) (other citations omitted). As the Supreme Court noted in *O'Sullivan*, "[c]omity . . . dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." *Id.*, 526 U.S. at 844 (citations omitted); *see also Galdamez*, 394 F.3d at 72 (quotation omitted).[4] Thus, this Court must determine whether petitioner has fully exhausted his initial ground for relief.

---

[4] This exhaustion requirement "reduces friction between the state and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan*, 526 U.S. at 845 (quotation and other citations omitted); *see also Galdamez*, 394 F.3d at 72 (quotation omitted).

A petitioner exhausts his state remedies in the federal habeas context by: "(i) present[ing] the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts); and (ii) inform[ing] that court (and lower courts) about both the factual and legal bases for the federal claim." *Ramirez v. Attorney Gen.,* 280 F.3d 87, 94 (2d Cir. 2001) (quoting *Picard v. Connor*, 404 U.S. 270, 276-77 (1971)). Thus, "in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Cox v. Miller*, 296 F.3d 89, 99 (2d Cir. 2002) (quoting *Daye v. Attorney General of New York*, 696 F.2d 186, 192 (2d Cir. 1982)); *see also Berry v. Hulihan,* No. 08 Civ. 6557, 2009 WL 233981, at *2 (S.D.N.Y. Jan. 28, 2009) (citations omitted); *Jackson v. Senkowski*, No. 03 CV 1965, 2007 WL 2275848, at *5 (E.D.N.Y. Aug. 7, 2007). A "state prisoner does not 'fairly present' a claim to a state court" where the state court brief "does not alert [the court] to the presence of a federal claim . . . ." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *see also Williams v. Breslin*, No. 06-CV-2479, 2008 WL 4179475, at *3 (E.D.N.Y. Sept. 9, 2008) (citing *Baldwin*).

A federal court may properly find that a federal claim was "fairly presented" to the state courts if "the legal basis of the claim made in state court was the 'substantial equivalent' of that of the habeas claim." *Daye*, 696 F.2d at 192 (quoting *Picard*, 404 U.S. at 278) (additional citations omitted); *Aguilera v. Walsh*, No. 01 CIV. 2151, 2001 WL 1231524, at *5 (S.D.N.Y. Oct. 17, 2001) (noting that "fair presentation" requirement of exhaustion doctrine requires "constitutional claims to [be presented] to the highest state court").

Counsel's appellate brief to the Fourth Department did not argue that the cumulative effect of the County Court's evidentiary rulings deprived his client of his constitutional right to a fair trial. *See* App. Br. Although Montanez's *Pro Se* Appellate Brief argued that claim to the

Appellate Division, Montanez did not include any citations to any federal case, statute, or provision of the United States Constitution in arguing that appellate claim.  *See Pro Se* Appellate Brief at pp. 15-25.[5]  Thus, Montanez did not fairly present the federal claim he now raises in his initial ground for relief in the appellate brief he filed with the Fourth Department.

Additionally, to satisfy the exhaustion requirement, a petitioner must have asserted all of the claims for which federal habeas review is sought in his application for leave to appeal to the New York Court of Appeals.  *See Galdamez*, 394 F.3d at 74-75 (citations omitted); *Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000) (describing process for seeking leave to appeal to New York's Court of Appeals); *Jamison v. Girdich*, No. 03 CIV.4826, 2005 WL 2338660, at *4 (S.D.N.Y. Sept. 26, 2005); *Bennett v. Artuz*, 285 F.Supp.2d 305, 311 (E.D.N.Y. 2003) (citing *Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991)).

Appellate counsel's application to New York's Court of Appeals did not seek leave to appeal on any claim alleging that the cumulative effect of the errors committed by the Trial Court deprived Montanez of his right to a fair trial.  *See* Dkt. No. 15-6.  Montanez's *pro se* application

---

[5] Some of the state cases cited by Montanez referenced federal court decisions in resolving the appellate issues before those respective courts.  *See Pro Se* Appellate Brief at pp. 15-25.  This Court finds, however, that those cases did not employ a federal constitutional analysis in like-fact situations such that this Court could properly view Montanez's initial ground for relief to be exhausted for purposes of this federal habeas action.  *See Cato v. Supt., Groveland Correctional Facility*, 463 F.Supp.2d 367, 371 (W.D.N.Y. 2006); *Daye*, 696 F.2d at 194).  To conclude that petitioner exhausted this claim, this Court must find that the state courts were adequately put on notice of the federal nature of his claim because Montanez's *Pro Se* Appellate Brief cited state court decisions, some of which in turn referred to federal cases which in turn discussed the concept of when a trial court's evidentiary rulings may properly be found to have deprived an individual of his right to a fair trial.  This Court rejects this proposition and finds that such an argument is " 'simply too soggy a reed upon which to rest a constitutional claim.' "  *Williams v. Artus*, No. 9:09-CV-0419, 2010 WL 3323671, at *4 (N.D.N.Y. Aug. 20, 2010) (McAvoy, C.J.) (quoting *Levine v. Comm'r of Corr. Servcs.*, 44 F.3d 121, 126 (2d Cir. 1995)) (other citation omitted).

seeking leave to appeal also failed to seek leave to appeal from New York's Court of Appeals on the issue raised by him in his initial ground for relief. That application specifically requested that the Court grant leave with respect to his appellate claims that: i) he was denied the effective assistance of counsel; ii) the County Court erred in its "witness intimidation ruling" and iii) the Trial Court failed to administer prospective jurors the required oath. *See* Dkt. No. 15-7. Although that application contained a "catch-all" request that such court also grant leave to determine "the remaining contentions" – a possible reference to the other appellate issues raised by Montanez in his *Pro Se* Appellate Brief – this passing reference to that brief – a copy of which was not provided to such court by Montanez along with his leave application – may not properly be found by this Court to have exhausted Montanez's current claim that the cumulative effect of the County Court errors deprived him of his constitutional right to a fair trial. *See Jordan v. Lefevre*, 206 F.3d 196, 198-99 (2d Cir. 2000); *see also Abdul-Khaliq v. Smith*, No. 09 CIV. 2516, 2010 WL 5830488, at *12 (S.D.N.Y. Dec. 11, 2010) ("a passing reference to enclosed appellate briefs is not enough to fairly present claims to the Court of Appeals when the appellant's letter has identified the claims he wishes the Court of Appeals to review"), *adopted Abdul-Khaliq v. Smith*, No. 09 CIV. 2516, 2011 WL 672449 (S.D.N.Y. Feb. 24, 2011).

The foregoing establishes that Montanez did not exhaust the claims he asserts in his first ground for relief.

When a habeas petitioner does not fully exhaust his claims, a federal court may find that there is an absence of available state remedies "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)); *see also Lurie*

*v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000).[6]

Petitioner cannot now file a second appeal with the Fourth Department in which he argues, in federal terms, that the cumulative effect of the errors purportedly committed by the County Court deprived Montanez of his due process rights because a defendant is "entitled to one (and only one) appeal to the Appellate Division." *See Aparicio*, 269 F.3d at 91 (citations omitted). Moreover, since "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal," *Aparicio*, 269 F.3d at 91 (citing N.Y. Crim. Proc. Law § 440.10(2)(c)); *see Parker v. Ercole*, 582 F. Supp. 2d 273, 290 (N.D.N.Y. 2008) (quotation and other citation omitted), (Hurd, J.), petitioner could not now properly raise this claim, which is plainly based on matters contained in the state court record, in a motion to vacate his judgment of conviction pursuant to New York's Criminal Procedure Law ("CPL") § 440.10. *See Aparicio*, 269 F.3d at 91; *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994). Therefore, this claim is "deemed exhausted" for purposes of petitioner's habeas application. *St. Helen v. Senkowski*, 374 F.3d 181, 183-84 (2d Cir. 2004); *Spence v. Superintendent Great Meadow Correctional Facility*, 219 F.3d 162, 170 (2d Cir. 2000). Although his first ground for relief is "deemed exhausted," it is also procedurally defaulted. *See Aparicio*, 269 F.3d at 90 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)); *see also Spence*, 219 F.3d at 170; *Ciochenda v. Artus*, No. 06 Civ. 5057, 2009 WL 1026018, at *5 (S.D.N.Y. Apr. 9, 2009) (unexhausted claims which petitioner can no longer pursue in state court are procedurally

---

[6] Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal district court may deny – but not grant – an unexhausted claim on the merits and consider the merits of any exhausted claims. *See Aparicio*, 269 F.3d at 91 n.5 (citation omitted); *Vanness v. Rock*, No. 9:08-CV-0361, 2009 WL 1870940, *6 n.10 (N.D.N.Y. June 29, 2009) (Sharpe, D.J.) (quoting *Aparicio*, 269 F.3d at 91 n.5) (other citation omitted).

forfeited).

## 2.  **Procedurally Defaulted Claims**

In both his fourth and fifth grounds for relief, Montanez challenges the sufficiency of the evidence adduced at trial regarding his guilt of the second degree felony-murder charge. *See* Petition, Grounds Four, Five.[7]  Respondent argues that Montanez is procedurally barred from obtaining the relief he seeks as to his claims challenging the sufficiency of evidence. *See* Resp. Mem. at pp. 26-30.

In addressing Montanez's appellate argument that the evidence presented by the prosecution was legally insufficient to support his felony-murder conviction, the Appellate Division found that Montanez had "failed to preserve that contention for [the court's] review." *Montanez*, 57 A.D.3d at 1366-67.

"It is well established that federal courts will not review questions of federal law presented

---

[7] In both of these grounds for relief, Montanez also argues that his conviction on the felony-murder charge was against the weight of the evidence. *See* Petition, Grounds Four, Five. However, weight of the evidence review is a product of New York state statute and therefore merely a state law issue. *See* CPL § 470.15; *Graham v. Ricks*, No. 9:02-CV-0303, 2004 WL 768579, at *14 (N.D.N.Y. Apr. 7, 2004) (McCurn, S.J.) (citations omitted); *Cardena v. Giambruno*, No. 03CIV 3313, 2004 WL 239722, at *4 (S.D.N.Y. Feb. 10, 2004) (citations omitted). It is well-established that habeas corpus review is not available for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-69 (1991). As such, no cognizable federal issue is presented by a habeas claim challenging the weight of the evidence adduced at trial. *Graham*, 2004 WL 768579, at *14; *Cardena*, 2004 WL 239722, at *4; *Glisson v. Mantello*, 287 F.Supp.2d 414, 441 (S.D.N.Y. 2003) (citing *Givens v. Burge*, No. 02 Civ. 0842, 2003 WL 1563775, at *10 (S.D.N.Y. Mar. 4, 2003)) (collecting cases). Thus, Montanez's claims challenging the weight of the evidence offered against him at trial is not cognizable in this action. *See Graham*, 2004 WL 768579, at *14; *Robinson v. Ricks*, No. 00 CV 4526, 2004 WL 1638171, at *3 (E.D.N.Y. July 22, 2004) ("[c]hallenges to the weight of the evidence supporting a conviction are not cognizable on federal habeas review") (citation omitted); *Camacho v. McKinney*, No. 04 Civ.2226, 2004 WL 1490308, at *1 (S.D.N.Y. July 1, 2004) ("petitioner's first ground ... arguing only that the verdict was against the weight of the evidence – [] raises no claim cognizable in a federal habeas corpus proceeding.").

in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.' " *Cone v. Bell*, ___ U.S. ___, ___, 129 S.Ct. 1769, 1780 (2009) (quoting *Coleman*, 501 U.S. at 729) (other citation omitted).  Where the Appellate Division finds that a party has failed to preserve an issue for appellate review, such a determination "constitutes an independent and adequate state law ground" precluding review of such a claim when later raised in a federal habeas corpus petition.  *See Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999); *Rush v. Lempke*, No. 09-CV-3464, 2011 WL 477807, at *14 (E.D.N.Y. Feb. 2, 2011) (citation omitted).  Nevertheless, "a procedural bar will be deemed adequate only if it is based on a rule that is firmly established and regularly followed by the state in question." *Garraway v. Phillips*, 591 F.3d 72, 75 (2d Cir. 2010) (internal quotation and citations omitted).  Furthermore, application of the procedural rule barring the claim is not appropriate where such application would be "exorbitant." *Clark v. Perez*, 510 F.3d 382, 391 (2d Cir. 2008); *Murden v. Artuz*, 497 F.3d 178, 192 (2007); *Garvey v. Duncan*, 485 F.3d 709, 713-14 (2d Cir. 2007).[8]

A finding by an appellate court that an issue is unpreserved for its review is an independent and adequate state procedural denial of such a claim that is both firmly established and regularly followed by the New York courts. *Parker v. Conway*, No. 07-CV-00373, 2010 WL 1854079, at *5 (N.D.N.Y. May 7, 2010) (Singleton, J., sitting by designation) (footnote and citation omitted); *Venable v. Walsh*, No. 05-CV-84, 2009 WL 750230, at *7 (E.D.N.Y. Mar. 19,

---

[8] It has been observed that even if a state procedural rule is "discretionary," it may still nevertheless serve as an "adequate and independent" state rule barring future habeas claims. *Beard v. Kindler*, ___ U.S. ___, 130 S.Ct. 612, 618 (2009).  Moreover, a discretionary rule may be "firmly established and regularly followed" even if the appropriate exercise of discretion may allow consideration of the claim in some cases but not others. *Id.*

2009). Furthermore, petitioner does not allege, and nothing before this Court suggests, that this action presents an exceptional case such that application of the above-described procedural bar to his claim challenging the sufficiency of the evidence would be "exorbitant." *See Clark*, 510 F.3d at 391; *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (discussing "guideposts" federal courts should consider in ascertaining whether application of the procedural bar is appropriate). Therefore, this Court finds that petitioner has procedurally defaulted on his fourth and fifth grounds for relief.

### 3.    <u>Consequences of Procedural Default</u>

Federal courts may only consider the merits of procedurally defaulted claims where the petitioner can establish both cause for the procedural default and resulting prejudice or, alternatively, that a fundamental miscarriage of justice would occur absent federal court review. *See Dixon v. Miller*, 293 F.3d 74, 80-81 (2d Cir. 2002) (quoting *Coleman*, 501 U.S. at 750); *St. Helen*, 374 F.3d at 184 (holding that, "[i]n the case of procedural default (including where an unexhausted claim no longer can proceed in state court), [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent' " (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)); *Calderon v. Perez*, No. 10 CIV. 2562, 2011 WL 293709, at *20 (S.D.N.Y. Jan. 28, 2011) (Report-Recommendation), *adopted*, *Calderon v. Perez*, No. 10 CIV. 2562, 2011 WL 1405029 (S.D.N.Y. Apr. 5, 2011); *Parker v. Phillips*, No. 05-CV-1323, 2008 WL 4415255, *3 (E.D.N.Y. Sept. 24, 2008) (holding that federal courts may only consider procedurally barred claims where the petitioner establishes either cause for his default and prejudice therefrom, or that he is actually innocent of the crimes of which he was convicted) (quotations and citations omitted).

To establish legal "cause" which would enable this Court to consider his procedurally forfeited claims, Montanez must show that some objective, external factor impeded his ability to fully exhaust his initial ground for relief, or preserve the claims he asserts in his fourth and fifth grounds for appellate review. *See Coleman*, 501 U.S. at 753; *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999) (citation omitted); *Pinero v. Greiner*, 519 F. Supp. 2d 360, 383 (S.D.N.Y. 2007) (quoting *Restrepo*, 178 F.3d at 638). Examples of such external factors include "interference by officials," the ineffective assistance of counsel, or proof that "the factual or legal basis for a claim was not reasonably available" at the time of the petitioner's default. *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (internal quotations and other citation omitted); *Ikker v. Taylor*, No. 08 CV 3301, 2008 WL 5110866, *4 (E.D.N.Y. Dec. 3, 2008) (quotation omitted).

Nowhere in this action does Montanez argue – much less establish – legal cause for his failure to fully exhaust his initial ground for relief, or his failure to preserve for appellate review the evidence sufficiency claims he raises in his fourth and fifth grounds.[9] Since petitioner has not established cause for these procedural defaults, this Court need not consider whether he has suffered the requisite prejudice because federal habeas relief is unavailable under this limited exception permitting review of procedurally forfeited claims unless the petitioner demonstrates **both** cause and prejudice. *See Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Long v. Lord*, No. 03-CV-0461, 2006 WL 1977435, *6 (N.D.N.Y. Mar. 21, 2006) (McCurn, S.J.) (footnote and

---

[9] Significantly, petitioner has never filed any application with the County Court in which he argued that his appellate counsel rendered ineffective assistance by failing to argue, in federal terms, that the cumulative effect of the Trial Court's errors deprived Montanez of his right to a fair trial. *See* Petition at ¶ 10. Nor has petitioner ever claimed that trial counsel was ineffective because he failed to preserve petitioner's claims challenging the sufficiency of evidence adduced at trial for appellate review. *Id.*

citations omitted); *D'Alessandro v. Fischer*, No. 01 Civ. 2551, 2005 WL 3159674, *9 n.10 (S.D.N.Y. Nov. 28, 2005) (stating that, "[a]s Petitioner has not shown cause for his default, this Court need not even reach the question of whether Petitioner can show prejudice") (citing *Stepney*, 760 F.2d at 45).

The finding that Montanez has failed to demonstrate cause for his procedurally defaulted claims does not necessarily preclude this Court from considering such grounds for relief, however, because, as noted above, a federal court may nonetheless properly review such claims if it is convinced that the failure to consider the defaulted claims would amount to a fundamental miscarriage of justice. *E.g.*, *Dixon*, 293 F.3d at 80-81 (citation omitted). However, the Second Circuit has noted that:

> the fundamental miscarriage of justice exception is "extremely rare" and should be applied only in "the extraordinary cases." *Schlup v. Delo*, 513 U.S. 298, 321-22, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley*[], 523 U.S. [at] 623 . . . . "To establish actual innocence, [a] petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.' " *Id.* (citing *Schlup*, 513 U.S. [at] 327-28) . . . (some internal citations and quotation marks omitted).

*Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003); *see also D'Alessandro*, 2005 WL 3159674, at *8 (citations omitted); *Marengo v. Conway*, 342 F. Supp. 2d 222, 228 (S.D.N.Y. 2004) (quotation and other citation omitted).

In conjunction with this proceeding, the state court record has been reviewed. That review has satisfied this Court that substantial evidence of Montanez's guilt of the felony-murder, manslaughter, and criminal possession of a weapon charges was adduced at trial. As the Fourth Department properly noted in (alternatively) denying on the merits Montanez's appellate challenge

concerning the evidence of his guilt presented at trial, the prosecution:

> presented evidence establishing that [Montanez] and his
> codefendant went to the victim's home with the intent to commit a
> robbery and that they procured guns that same day for the purpose
> of committing the robbery.  In addition, they presented evidence that
> [Montanez] made statements after the robbery in which he admitted
> that a robbery had been attempted or completed.

*Montanez*, 57 A.D.3d at 1367.[10]

Since Montanez cannot now seek safe harbor from the dismissal of his defaulted claims

under this final exception permitting habeas review of his procedurally defaulted claims, the Court

denies, as procedurally forfeited, the claims he asserts in his first, fourth, and fifth grounds for

relief.[11]

### B.    Claim Relating to Oath of Truthfulness

In his third ground, Montanez claims that he was denied his constitutional right to a fair

---

[10] The Trial Court specifically endorsed the jury's finding that Montanez was guilty of the felony-murder of Silvagnoli prior to imposing its sentence on Montanez.  *See* Sentencing Tr. at pp. 13-14.

[11] As this Court noted in its order filed August 18, 2010, Montanez failed to provide any details or citations to the trial record regarding his claims in his first ground for relief concerning the purportedly erroneous evidentiary rulings of the County Court.  *See* Dkt. No. 4 at p. 2 n.2. This Court therefore must presume that the errors about which Montanez complains in his initial ground for relief relates to the errors purportedly committed by the Trial Court that petitioner references in his seventh and eighth grounds for relief.  However, because, as is discussed more fully *post*, this Court has found those grounds for relief to be substantively without merit, his initial ground for relief, in which he alleges that the cumulative effect of those purported errors deprived Montanez of his due process right to a fair trial, is also denied on the merits.

As to the claims petitioner asserts in his fourth and fifth grounds, after having reviewed the state court record, this Court alternatively finds that Montanez has failed to establish that the decision of the Appellate Division denying his challenge to the sufficiency of the evidence on the merits, *see Montanez*, 57 A.D.3d at 1367, is either contrary to, or reflects an unreasonable application of, *In re Winship*, 397 U.S. 358, 361-64 (1970), *Jackson v. Virginia*, 443 U.S. 307, 316-22 (1979), and their progeny.  Those claims are therefore also alternatively denied on the merits.

trial because the County Court "failed to administer [the] truthfulness oath to prospective jurors prior to questioning regarding [their] qualifications to serve."  *See* Petition, Ground Three.

However, the record firmly establishes that before any of the prospective jurors were questioned regarding whether they could properly serve on the petit jury, the "[p]rospective jurors were sworn." Trial Tr. at p. 25.  Later on during *voir dire*, after six individuals had been chosen for the jury, those six individuals were administered an oath.  *Id.* at pp. 139-40.  When the final eight members – the six "regular" members of the jury and two alternates – were selected for the jury, those remaining eight individuals were also administered an oath and sworn in by the Trial Court.  *Id.* at p. 187.

There is a "strong presumption of constitutional regularity in state judicial proceedings." *Darr v. Burford*, 339 U.S. 200, 218 (1950).  Consequently, a habeas court will presume "regularity" in the conduct of the trial, absent substantial evidence to the contrary.  *See Moreau v. Ercole*, No. 08-CV-LS45, 2011 WL 1741824, at *10 (E.D.N.Y. May 5, 2011) (citations omitted); *Calizaire v. Lacy*, No. 94 CV 4027, 1996 WL 586795, at *2 (E.D.N.Y. Oct. 10, 1996) (emphasis added); *Benn v. Stinson*, 917 F.Supp. 202, 208 (S.D.N.Y. 1995).  Significantly, self-serving declarations on the part of a habeas petitioner do not overcome this presumption. *Honeycutt v. Ward*, 612 F.2d 36, 41 (2d Cir. 1979); *Smith v. Scully*, 614 F.Supp. 1265, 1268 (S.D.N.Y. 1984), *aff'd Smith v. Scully*, 779 F.2d 37 (2d Cir. 1985).

Since the record unequivocally establishes that:  (i) all prospective jurors were administered an oath prior to the beginning of *voir dire* and (ii) the individuals who were ultimately chosen to serve on the petit jury were given an additional oath prior to the presentation of any evidence in the related criminal matter, petitioner's third ground for relief, in which he

argues that the Trial Court failed to administer a "truthfulness oath to prospective jurors" is denied because such argument is squarely contradicted by the record.

    **C.**    <u>**Sentencing Claim**</u>

In his sixth ground for relief, Montanez argues that the Trial Court committed error when it directed that the sentence imposed on him for his weapons possession conviction was to run consecutive to the sentence Montanez received on the second degree felony-murder and manslaughter convictions. *See* Petition, Ground Six.

However, as this Court noted *ante* in discussing the related state court proceedings, the Appellate Division modified the sentence imposed on Montanez by the County Court. Specifically, that court "agree[d] with [Montanez] that the sentence imposed for criminal possession of a weapon in the second degree must run concurrently with the sentence imposed for murder in the second degree." *Montanez*, 57 A.D.3d 1367-68. That Court therefore "modif[ied] the judgment accordingly." *Id.* at 1368. Thus, the sentence imposed on Montanez for his weapons possession conviction has already been modified by the Fourth Department so that such sentence runs concurrent with the sentences he received due to his felony-murder and manslaughter convictions. This Court therefore denies petitioner's sixth ground for relief as unnecessary.

    **D.**    <u>**Remaining Claims**</u>

    **1.**    <u>**Governing Standard of Review**</u>

The enactment of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") brought about significant new limitations on the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254. In discussing this deferential standard, the Second Circuit noted in *Jones v. West*, 555 F.3d 90 (2d Cir. 2009) that:

a federal court may grant a writ of habeas corpus for a claim that has
previously been adjudicated on the merits by a state court only if the
adjudication of the claim:

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

*Id.* at 96 (quoting 28 U.S.C. § 2254(d)); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)

(citing 28 U.S.C.§ 2254(d)(1), (2)); *Hawkins v. Costello*, 460 F.3d 238, 242-43 (2d Cir. 2006).  In

providing guidance concerning application of this standard, the Second Circuit has observed that:

> a state court's decision is "contrary to" clearly established federal
> law if it contradicts Supreme Court precedent on the application of a
> legal rule, or addresses a set of facts "materially indistinguishable"
> from a Supreme Court decision but nevertheless comes to a different
> conclusion than the Court did.  [*Williams v. Taylor*, 529 U.S. 362,]
> 405-06 [(2000)]; *Loliscio v. Goord*, 263 F.3d 178, 184 (2d Cir.
> 2001). . . .  [A] state court's decision is an "unreasonable application
> of" clearly established federal law if the state court "identifies the
> correct governing legal principle from [the Supreme] Court's
> decisions but unreasonably applies that principle to the facts" of the
> case before it.  *Williams*, 529 U.S. at 413.

*Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007); *see also Williams v. Artuz*, 237 F.3d 147,

152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with determining

whether the state court's ruling was merely incorrect or erroneous, but instead whether such

decision was "objectively unreasonable."  *Williams*, 529 U.S. at 409; *see also Sellan v. Kuhlman*,

261 F.3d 303, 315 (2d Cir. 2001).  "While the precise method for distinguishing objectively

unreasonable decisions from merely erroneous ones is somewhat unclear, it is well-established in

this Circuit that the objectively unreasonable standard of § 2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." *Sorto v. Herbert*, 497 F.3d 163, 169 (2d Cir. 2007) (internal quotation marks and alteration omitted). As the Court noted in *Schriro*, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.*, 550 U.S. at 473.

## 2.    Substance of Petitioner's Remaining Claims

### i.    Ground Two

In his second ground for relief, Montanez argues that he received the ineffective assistance of trial counsel because such counsel "failed to effective[ly] cross-examine prosecution witnesses regarding alleged admissions made by" Montanez. *See* Petition, Ground Two.

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const., amend. VI. To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must show both: i) that counsel's representation fell below an objective standard of reasonableness, measured in the light of the prevailing professional norms; and ii) resulting prejudice that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688-90 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in *Strickland*).

Over twenty (20) witnesses provided testimony on behalf of the prosecution at the related criminal trial, and the transcript of that matter consisted of over six hundred (600) transcribed

pages.  *See* Trial Tr.  Montanez has not identified which of those numerous witnesses he now claims his defense counsel failed to adequately cross-examine regarding statements made by Montanez.  *See* Petition, Ground Two.  Nor has petitioner cited any portion of the trial transcript in support of this claim.  *Id.*  These omissions represent a failure on the part of Montanez to meet his burden of proof in this habeas action.  *Toland v. Walsh*, No. 9:04-CV-0773, 2008 WL 65583, at *14 (N.D.N.Y. Jan. 4, 2008) (Sharpe. J.) (citations omitted).

Furthermore, this claim is contradicted by the record.  For example, in defense counsel's questioning of Freeman, counsel questioned Freeman about his claim that he was informed by Montanez that he sought to have certain potential prosecution witnesses killed.  *See* Trial Tr. at pp. 353-54.  Counsel also cross-examined Arroyo concerning her testimony that she heard Montanez admit to shooting Silvagnoli, and counsel specifically brought to the jury's attention discrepancies which existed between Arroyo's trial testimony and the testimony she provided to the grand jury that indicted Montanez regarding her interaction with the petitioner when he implicated himself in Silvagnoli's homicide.  *Id.* at pp. 394-98.  Defense counsel also cross-examined Vasquez "about this breakfast that you had where you claim that [Montanez] told you that he shot this guy."  *Id.* at pp. 555-56.

As Magistrate Judge Randolph F. Treece properly observed in *Tolliver v. Greiner*, No. 02-CV-0057, 2005 WL 2179298 (N.D.N.Y. Sept. 8, 2005), *adopted Tolliver v. Greiner*,  No. 02-CV-0057, 2005 WL 2437021 (N.D.N.Y. Sept. 30, 2005) (Kahn, J.):

> The method of cross-examination is an area of trial strategy which courts generally decline to second-guess.  *United States v. DeFeo*, 1997 WL 3259 (S.D.N.Y.), *aff'd*, 152 F.3d 921 (2d Cir.1998). The Second Circuit has consistently declined to deem counsel ineffective "notwithstanding a course of action (or inaction) that seems risky, unorthodox or downright ill-advised."  *Tippins v. Walker*, 77 F.3d

> 682, 686 (2d Cir.1996) (citing, *inter alia*, *Cuevas v. Henderson,* 801
> F.2d 586, 590 (2d Cir.1986) (questioning that "opened the door" to
> damaging evidence not ineffectiveness) (other citations omitted);
> *see also United States v. Nersesian*, 824 F.2d 1294, 1321 (2d
> Cir.1987) (noting that the decision "whether to engage in
> cross-examination" is "strategic in nature" and not a basis upon
> which a claim of ineffective assistance of counsel is properly based).

*Tolliver*, 2005 WL 2179298, at *7.

The record plainly demonstrates that defense counsel cross-examined prosecution witnesses about statements made by Montanez regarding his complicity in the death of Silvagnoli. Petitioner has not established that the manner in which his trial counsel conducted that cross-examination should not be considered sound trial strategy on the part of defense counsel, or that trial counsel's conduct in that regard fell below an objective standard of reasonableness. Nor has he demonstrated that, had trial counsel cross-examined prosecution witnesses differently, the outcome of Montanez's trial may have been different.

Nothing before this Court suggests that the Fourth Department's decision denying Montanez's claim alleging ineffective assistance of trial counsel, *see Montanez*, 57 A.D.3d at 1368, is either contrary to, or represents an unreasonable application of, *Strickland* and its progeny.[12] This Court therefore denies petitioner's second ground for relief.

### ii.    <u>Ground Seven</u>

In his seventh ground for relief, Montanez argues that the County Court's *Ventimiglia* ruling, which allowed the District Attorney to inquire into uncharged crimes which alleged that Montanez had threatened and/or intimidated certain potential witnesses for the prosecution,

---

[12]At the conclusion of Montanez's trial, the County Court specifically commended both petitioner's counsel and the prosecutor "for the able manner in which each ... carried out his responsibility as an advocate." Trial Tr. at p. 679.

amounted to an abuse of discretion which violated Montanez's constitutional rights.  *See* Petition, Ground Seven.

The Appellate Division found that the Trial Court did not err in its *Ventimiglia* ruling when it allowed the District Attorney to admit evidence of Montanez's prior bad acts, including the threats he made concerning three of the prosecution's witnesses, because such evidence "was admissible on the issue of [petitioner's] consciousness of guilt."  *Montanez*, 57 A.D.3d at 1367.

Initially, this Court notes that "[b]ecause the United States Supreme Court has declined to determine whether use of uncharged crimes would violate due process, the Appellate Division's rejection of petitioner's argument cannot be considered an unreasonable application of clearly established Supreme Court precedent."  *Jones v. Conway*, No. 09-CV-6045, 2011 WL 1356751, at *2 (W.D.N.Y. Apr. 4, 2011).

Additionally, viewing this challenge as one alleging a general Due Process violation regarding petitioner's right to a fair trial, this Court notes that the right to Due Process guaranteed by the United States Constitution is violated if a state criminal trial proceeds without "the fundamental fairness essential to the very concept of justice."  *Lisenba v. California,* 314 U.S. 219, 236 (1941).  However, as the Second Circuit has observed, the introduction of improper evidence against an individual at trial does not amount to a constitutional violation unless the evidence " 'is so extremely unfair that its admission violates fundamental conceptions of justice.' "  *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).  As Senior United States District Judge Frederick J. Scullin, Jr. noted in *Chanowitz v. Miller*, No. 05-CV-0120, 2008 WL 2323388 (N.D.N.Y. June 2, 2008), " 'evidence of prior crimes, wrongs, or acts is admissible for any purpose other than to show a defendant's

criminal propensity[,]' *United States v. Harris*, 733 F.2d 994, 1006 (2d Cir. 1984), as long as it is

'relevant to some disputed issue in the trial' " and the Trial Court balanced the probative value of

such evidence against the unduly prejudicial nature of same. *Chanowitz*, 2008 WL 2323388, at

*10.

  This Court agrees with the Fourth Department that the County Court's evidentiary ruling

allowing the above evidence was properly admitted to establish Montanez's consciousness of guilt

of the charged crimes. *Montanez*, 57 A.D.3d at 1367.  Additionally, the record demonstrates that

the Trial Court provided appropriate limiting instructions to the jury regarding the purpose of such

evidence and the manner in which same could be utilized by the jury during the course of its

deliberations. *See* Trial Tr. at pp. 702-03.[13]  The jury is presumed to have followed these and all

––––––––––––––––––––

[13] The Trial Court, in instructing the jury how it could consider evidence which suggested that Montanez evidenced a consciousness of guilt through his actions and statements to others, instructed the jury as follows:

> Under some limited circumstances, proof of such conduct may be considered by the jury.  Let me explain those circumstances to you.  Your first duty is to decide whether evidence of the defendant's conduct upon which the People rely, if believed by you, does in fact evidence a consciousness of guilt on the part of the defendant. You must examine such evidence carefully. Such conduct may have an innocent explanation.  If you find such an explanation from the nature of the conduct itself, then you must disregard such evidence totally.  Forget that you heard it.... Only if you find that the conduct of the defendant was solely motivated by a consciousness of guilt may you consider and weigh it in your  deliberations.  I instruct you that proof of conduct evidencing consciousness of guilt has slight value.  Standing alone, such evidence may never be made — may never be sufficient for finding a defendant guilty.  However, when the People have introduced other direct and substantial evidence pointing towards the guilt of the defendant, then evidence of the consciousness of guilt may be considered by you together with such other evidence in arriving at your verdict.

Trial Tr. at pp. 702-03.

of the County Court's instructions.  *See Smith v. Barkley*, No. 99-CV-0257, 2004 WL 437470, at

*4 n.4 (N.D.N.Y. Feb. 18, 2004) (Sharpe, D.J.) (citing *Weeks v. Angelone*, 528 U.S. 225, 234

(2000); *Shariff v. Artuz*, No. 97CIV.2882,  2001 WL 135763, at *3 (S.D.N.Y. Feb. 16, 2001))

(other citation omitted).

In light of the foregoing, this Court concludes that the Trial Court's claimed error in

allowing the prosecutor to introduce the evidence referenced above did not have a substantial and

injurious effect or influence in determining the jury's verdict.  *See Brecht v. Abrahamson*, 507 U.S.

619, 637-38 (1993).  Additionally, the substantial evidence of Montanez's guilt of the felony-

murder, manslaughter and weapons possession charges discussed more fully above establishes that

any error on the part of the County Court in allowing the above-described evidence to be utilized

against Montanez at his trial was necessarily harmless beyond a reasonable doubt.  *Chapman v.

California*, 386 U.S. 18, 24 (1967).  This Court therefore denies his seventh ground for relief.

### iii.    <u>Ground Eight</u>

In his eighth and final ground, Montanez argues that the County Court committed error

when it failed to instruct the jury that certain prosecution witnesses were accomplices as a matter

of law whose testimony had to be corroborated.  *See* Petition, Ground Eight.

Unfortunately for petitioner, there is no corroboration requirement embedded in the United

States Constitution.  *See Caminetti v. United States*, 242 U.S. 470, 495 (1917) ("there is no

absolute rule of law preventing convictions on the testimony of accomplices if juries believe

them").  Therefore, as the court noted in *Roberts v. Smith*, No. 10 CIV 4264, 2010 WL 5288198

(E.D.N.Y. Dec. 14, 2010) in denying petitioner's claim that a prosecution witness's testimony was

not sufficiently corroborated:  "[b]ecause federal habeas corpus is available only to review

convictions obtained in violation of the United States Constitution, petitioner's claim cannot be

considered by this Court." *Roberts*, 2010 WL 5288198, at *1 (citing *Scott v. Unger*, No.

08-CV-0145, 2010 WL 3241825, *13-14 (W.D.N.Y. Aug. 16, 2010)).  As the court noted in

*Young v. McGinnis*, 411 F.Supp.2d 278 (E.D.N.Y. 2006) in denying a similar claim seeking

federal habeas relief:

> The claim of error is entirely based on the New York State rule of
> evidence requiring that the testimony of an accomplice be supported
> by corroborative evidence tending to connect the defendant with the
> commission of the offense in order to sustain a conviction for such
> offense.  *See* N.Y.Crim. Proc. Law § 60.22.  The federal constitution
> does not prohibit the conviction of a petitioner based on the
> uncorroborated testimony of an accomplice.  *See Caminetti v.
> United States*, 242 U.S. 470, 495, 37 S.Ct. 192, 198, 61 L.Ed. 442
> (1917); *Martinez v. Walker*, 380 F.Supp.2d 179, 183 (W.D.N.Y.
> 2005); *Gaiter v. Lord*, 917 F.Supp. 145, 150 (E.D.N.Y. 1996)
> (collecting cases).  Petitioner was not deprived of a federal
> constitutional right by the trial court's failure to 1) instruct the jury
> to make a factual finding as to whether [an individual] was an
> accomplice and 2) charge the jury on the state evidentiary rule
> requiring corroboration of accomplice testimony.  No Supreme
> Court case has been brought to this court's attention ruling that a
> denial of a state accomplice corroboration charge is a federal
> constitutional violation.  The claim of error is entirely based on the
> New York State rule of evidence requiring that the testimony of an
> accomplice be supported by corroborative evidence tending to
> connect the defendant with the commission of the offense in order to
> sustain a conviction for such offense.  *See* N.Y.Crim. Proc. Law §
> 60.22.

*Young*, 411 F.Supp.2d at 299; *see also Santone v. Fischer*, No. 04-CV-947, 2010 WL 4702448, at

*16 (N.D.N.Y. Sept. 13, 2010) (Homer, M.J.) (citing *Young*), *adopted*, *Santone v. Fischer*, No.

04-CV-947, 2010 WL 4703396 (N.D.N.Y. Nov. 12, 2010) (Mordue, C.J.).

     Furthermore, it is well-established that before a federal court may overturn a conviction

due to an allegedly erroneous jury instruction, "it must be established not merely that the

instruction is undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973) (internal quotation omitted); *Estelle*, 502 U.S. at 72 (quoting *Cupp*). Moreover, "[w]here the claimed error is not an erroneous jury instruction but the failure to give a requested instruction, the petitioner bears a heavy burden in showing that the trial court's failure to give the instruction to the jury was an error of constitutional magnitude." *Williams v. Bennett*, No. 00CIV6164, 2001 WL 849746, at *10 (S.D.N.Y. July 27, 2001) (citing *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).

Montanez has failed to establish that the County Court's failure to provide an "accomplice as a matter of law" charge to the jury regarding certain prosecution witnesses was constitutionally significant.[14] He has also not demonstrated that the Appellate Division's decision rejecting this aspect of his appeal was either contrary to, or an unreasonable application of, relevant, clearly established Supreme Court precedent. The Court therefore denies his eighth and final ground for relief.

## III.  CERTIFICATE OF APPEALABILITY

Finally, the Court notes that 28 U.S.C. § 2253(c) provides, in relevant part, as follows:

> Unless a circuit justice or judge issues a certificate of appealability,
> an appeal may not be taken to the court of appeals from . . . the final

---

[14] The issue as to whether to charge a witness as an accomplice as a matter of law or fact rests within the sound discretion of the trial judge. *Smithwick v. Walker*, 758 F.Supp. 178, 186 (S.D.N.Y.) (citation omitted), *aff'd*, 948 F.2d 1278 (2nd Cir. 1991). Where the evidence does not "indisputably and conclusively" establish that the individual was an accomplice to the crime, a trial court may properly allow the jury to consider whether the evidence establishes that such individual was an accomplice. *Id*. After having reviewed the state court record, this Court is satisfied that Montanez has not established that he was entitled to the accomplice as a matter of law charge he references in his petition.

> order in a habeas corpus proceeding in which the detention
> complained of arises out of process issued by a State court . . . .[15]

28 U.S.C. § 2253(c)(1)(A).  A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2).  Since petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

**ACCORDINGLY**, it is

**ORDERED** that Montanez's petition (Dkt. No. 1) is **DENIED** and **DISMISSED**; and it is further

**ORDERED** that no Certificate of Appealability shall issue because petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c); and it is further

**ORDERED** that any state court records that were not filed in this action be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Decision and Order filed by any party).

Albany, New York
Date: June 6, 2011

<del>Gary L. Sharpe</del>
U.S. District Judge

---

[15] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." *See* Fed. R. App. P. 22(b).